UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


JOHN MICHAEL MORRIS                                    CIVIL ACTION

V.                                                     NO. 17-9013

SPENCER OGDEN, INC. and                                SECTION "F"
TRANSOCEAN OFFSHORE DEEPWATER
DRILLING, INC.


ORDER AND REASONS

Before the Court is Spencer Ogden's motion for summary judgment dismissing the plaintiff's claims under the Jones Act and the general maritime law.[1] For the following reasons, the motion is GRANTED.

**Background**

This maritime lawsuit arises out of a roustabout's claim that his hand was crushed while he performed a lifting operation aboard the vessel on which he was working.

Spencer Ogden, Inc. is an international company with offices throughout the world that supplies workers to other companies in the energy and offshore industries. On April 1, 2013, Spencer Ogden entered into a Master Purchasing Agreement ("MPA") with Transocean Onshore Support Services Limited, which governed the

---

[1] The plaintiff's seaman status is not being raised for purposes of this motion, but Spencer Ogden does not waive the argument.

1

relationship between the parties and the provision of personnel by Spencer Ogden to Transocean. Then, on June 6, 2017, a Work Order was issued pursuant to the MPA for Spencer Ogden to supply personnel to work for Transocean Deepwater Drilling Inc. on sites in the Gulf of Mexico from June 6, 2017 through June 6, 2019.

Meanwhile, in May of 2017, Spencer Ogden contracted with John Michael Morris for Morris to work as a roustabout. Initially, Spencer Ogden assigned Morris to work aboard the ROWAN RESOLUTE, which was owned and/or operated by Rowan Companies, Inc. Then, on July 4, 2017, Morris was assigned to work on the INVICTUS, which was owned and operated by Transocean Deepwater Drilling Inc.[2] Upon beginning this assignment, Morris participated in an orientation and safety meeting with Transocean personnel; he was placed under the supervision of the Transocean-employed crane operator, Robert "Smokey" Holman, and worked alongside Quindrick "Quinn" Stokes, another Transocean employee.

On the morning of July 11, 2017, Morris and Stokes were instructed to assist Holman, the crane operator, in moving a loaded cutting box to a different location on the vessel. This moving operation involved connecting the crane cable's hook to a D-ring that was affixed to the four corners of the box by slings and

---

[2] Prior to his employment with Spencer Ogden, Morris had worked as a roustabout for approximately three years and was certified as a rigger.

shackles.  Once the D-ring was attached to the hook, Morris gave the lift signal via radio to Holman to "cable up easy."  As a result, the box began to lift.  However, Morris noticed that one of the slings had caught "under the lip of the lid," which would affect the position of the load upon leaving the deck.  As a result, he called an "all stop order," which Holman initially followed.  Morris then walked over to the box and grabbed the sling with his hand in an attempt to put it on top of the box.  At that moment, the cable suddenly tightened, and Morris's right hand, as well as his ring and middle fingers, were crushed.

At the time of the incident, Transocean's equipment was in satisfactory condition, and Morris was wearing appropriate safety gear.  Nonetheless, Morris had not yet completed his on the job training.  Pursuant to Transocean's HSE manual, all company personnel involved in lifting operations must complete the Banksman/Slingers OJT and be aware of the correct and safe use of lifting equipment for the task.

On September 14, 2017, Morris sued Spencer Ogden, Inc. and Transocean Offshore USA, Inc., alleging claims under the Jones Act and/or the general maritime law.  Specifically, his complaint alleges that he was employed by Spencer Ogden; assigned to the

INVICTUS, which was owned, operated, and controlled by Transocean; and that the defendants' negligence caused his injuries.[3]

Spencer Ogden now seeks summary judgment in its favor, dismissing the plaintiff's Jones Act negligence and general maritime law claims.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment

---

[3] On December 6, 2017, Morris amended his complaint, substituting Transocean Offshore Deepwater Drilling, Inc. as a newly named defendant in place of Transocean Offshore USA, Inc. Morris had initially sued the incorrect entity.

4

is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

II.

Under the Jones Act, 46 U.S.C. § 30104, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injury, in whole or in part. Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997)(en banc). A Jones Act employer has the duty to provide his seaman employees with a reasonably safe place to work. Colburn v. Bunge Towing, Inc., 883 F.2d 372, 374 (5th Cir. 1989). The duty to provide a safe place to work is broad in scope, but it is not a form of strict liability; ordinary prudence under the circumstances is the standard for the duty of care owed by an employer to a seaman. Gautreaux, 107 F.3d at 335-36. An employer breaches that duty if it fails to exercise ordinary prudence and is thereby negligent. Id. at 339.

Spencer Ogden focuses its summary judgment argument on the ground that it was not negligent. First, the defendant points to Morris' complaint, which alleges that he was injured aboard the INVICTUS during the lifting of large boxes; that Transocean owned, operated, and controlled this vessel; and that this operational control extended to the vessel's entire crew, including the plaintiff. Notably, neither the complaint nor amended complaint alleges any type of wrongdoing or negligence on the part of Spencer Ogden that caused or contributed to the incident, aside from the conclusory allegation that Morris was injured "as the result of the negligence of Defendant, Spencer Ogden." Further, during his

deposition, when asked whether Spencer Ogden played any part in causing the accident, Morris said, "I wouldn't think so." Perhaps most importantly, Morris concedes in his opposition papers that "the facts demonstrate that Transocean is 100% at fault for this incident and [his] injuries" and that he, "in principle[,] does not contest Spencer Ogden's Motion for Summary Judgment on the basis of its lack of liability."

However, in an attempt to avoid summary judgment, the plaintiff contends that if, at trial, co-defendant Transocean seeks to shift its own liability for failure to train the plaintiff onto Spencer Ogden, genuine issues of material fact regarding Spencer Ogden's negligence would exist.[4] Therefore, Morris opposes summary judgment solely on the basis of a hypothetical.

Because there is nothing in the summary judgment factual record that would support a finding of negligence on the part of Spencer Ogden, summary judgment dismissing the plaintiff's Jones Act claim is appropriate.

---

[4] Morris derives this theory from Transocean's response to a request for admissions. When asked to admit or deny that it complied with its training policies in connection with the plaintiff's training prior to the incident, Transocean objected "to the extent the contractual agreement between Spencer Ogden and Transocean defines the alleged obligation to train."

III.

In his complaint and amended complaint, Morris also alleges a cause of action under the general maritime law, but he does not specify which claim he asserts.[5]

With respect to maintenance and cure, Morris admits in his Statement of Contested Material Facts that he is not asserting a claim for maintenance and cure. Accordingly, no such claim need be addressed by the Court.

With respect to unseaworthiness, Morris does not address such a claim in his opposition papers. Additionally, Morris admits in his Statement of Contested Material Facts that Spencer Ogden does not own the INVICTUS and that, at all material times, Transocean owned, operated, and controlled this vessel. Thus, any unseaworthiness claim the plaintiff seeks to assert against Spencer Ogden likewise has no support in the summary judgment factual record.[6]

---

[5] Independent from a claim under the Jones Act, a seaman may assert against his employer the following two claims under the general maritime law: (1) maintenance and cure and (2) unseaworthiness of a vessel. See Beech v. Hercules Drilling, Co., 691 F.3d 566, 570 (5th Cir. 2012).

[6] "In order to be held liable for breaching the duty of seaworthiness, the defendant 'must be in the relationship of an owner or operator of a vessel.'" Roberts v. Inland Salvage, Inc., No. 14-1929 SECTION A (4), 2018 U.S. Dist. LEXIS 55699, at *7 (E.D. La. Apr. 2, 2018) (quoting Baker v. Raymond Int'l, Inc., 656 F.2d 173, 181 (5th Cir. 1981)).

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendant Spencer Ogden's motion for summary judgment is hereby GRANTED.

New Orleans, Louisiana, September 17, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE